UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERROL THOMAS,

                              Plaintiff,
                                                        9:13-CV-0321
v.                                                     (MAD/TWD)

F. WAUGH, DICAIRANO, LEIFELD,
RONALD D. LARKIN, CHERYL MORRIS,
JOHN N. ANTONELLI, BLY, KAREN BELLAMY,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

ERROL THOMAS, 96-A-7903
Plaintiff pro se
Coxsackie Correctional Facility
Box 999
Coxsackie, NY 12051

HON. ERIC T. SCHNEIDERMAN                       TIFFINAY M. RUTNIK, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION and ORDER</u>

        This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Errol Thomas alleges that Defendants violated his constitutional rights by depriving him of his

religious head covering.  (Dkt. No. 26.)  Currently pending before the Court is Defendants'

motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 47.)  For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I.    BACKGROUND

The following facts are derived from the face of the operative complaint and the attachments thereto and are accepted as true for the purposes of deciding the pending motion to dismiss.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

At the time of the events at issue in this case, Plaintiff was incarcerated at Eastern New York Correctional Facility.  (Dkt. No. 26 ¶ 7.)  Plaintiff is a "non-mainland African American male . . . and wears his hair in locks."  *Id.* ¶ 19.  Plaintiff is Jewish and wears a head covering to express his awe and respect for God.  *Id.* ¶¶ 17-23.  Plaintiff believes that "[t]he failure to wear such a religious head-covering under Jewish-Hebrew tenet is to appear nude, insolent, and indecent before God."  *Id.* ¶ 24.  The head covering he wears "has alternately been referred to as a large Yarmulka, Kippah or Mitznefet."  *Id.* ¶ 22.

On March 18, 2012,[1] Defendant Correction Officer F. Waugh confiscated Plaintiff's head covering and issued a misbehavior report charging Plaintiff with disobeying a direct order, lying, and possessing contraband.  (Dkt. No. 26 ¶¶ 25-26; Dkt. No. 26 at 21.)  The misbehavior report characterized the head covering as a tam and stated that Plaintiff was not authorized to wear it because he was not registered as a Rastafarian.  (Dkt. No. 26 at 21.)  Plaintiff alleges that Defendant Waugh "knew that a questionable religious head [] covering was not to be confiscated

---

[1]    The complaint states that this incident occurred on March 19, 2010.  (Dkt. No. 26 ¶ 25.)  The documents attached to the complaint make it clear that the incident occurred in 2012. (Dkt. No. 26 at 21.)

until determined to be contraband and unlawful for that religious faith." *Id.* ¶ 27.

On March 27, 2012, Plaintiff was found not guilty of the disciplinary charges stemming from Defendant Waugh's report after a rabbi testified at his disciplinary hearing that the head covering was appropriate for someone of the Jewish faith. (Dkt. No. 26 at 23, 25.) The hearing officer returned Plaintiff's head covering and gave Plaintiff a copy of the disciplinary disposition with instructions for Plaintiff to show it to anyone who stopped him and questioned him about the head covering. *Id.* ¶ 31.

Plaintiff alleges that Defendant Sergeant DiCairano stopped him on two occasions during the summer of 2012 and verbally harassed him about his head covering, stating that she was going to "take the matter to Albany" in order to get the result of the disciplinary hearing changed. (Dkt. No. 26 ¶¶ 9, 34-39.)

On August 6, 2012, Plaintiff filed a grievance complaining about Defendant DiCairano's harassment. (Dkt. No. 26 at 27-28.) On September 26, 2012, Defendant Sergeant B. Leifeld sent Plaintiff a memorandum as part of the grievance process. *Id.* at 40. It stated "I've enclosed an edited copy of the E-mail I received from [Defendant Cheryl] Morris Director of Ministerial Services. I will not rebuttal (sic) this issue; the last conversion (sic) we had pertaining to your religious head gear is final." *Id.* The enclosed email stated that Defendant Morris determined "the head gear is inappropriate for a Jew. That headgear is for a Rasta." *Id.* at 42. Plaintiff alleges that Defendant Leifeld "ordered [Plaintiff] to take a picture wearing the religious headcovering so that Leifeld could send it to Albany to get the decision permitting [Plaintiff] to wear his religious headcovering changed." *Id.* ¶ 43. Plaintiff alleges that Defendant Leifeld took these actions to retaliate against Plaintiff "for filing a grievance against Leifeld's co-worker

DiCairano for harassment." *Id.* ¶ 44.

Defendant Superintendent Roland D. Larkin affirmed Defendant Leifeld's determination. (Dkt. No. 26 ¶ 11; Dkt. No. 26 at 32.)  The decision stated:

> IGRC investigation shows that the facility chaplain has referred the issue of religious headwear to Central Office Ministerial Services Office for determination.  Grievant's headwear was not confiscated, nor has grievant been issued a misbehavior report.  I find such direction is in compliance with Directive 4202 Section M-2.3. Grievant may wear headwear until such clarification can be made.

*Id.*

Plaintiff appealed to the Central Office Review Committee ("CORC").  (Dkt. No. 26 at 34.)  Defendant Karen Bellamy issued a memorandum stating that the appeal had been received. *Id.* at 36.  On March 1, 2013, Defendant IGP Coordinator John N. Antonelli sent an email stating "I have reviewed this grievance with [Defendant] Assistant Commissioner Bly with the determination that the grievant should not be allowed to keep or wear the disapproved religious headwear.  Please have the grievant advised of his disposal options, and forward Form #2068 showing how and when he disposed of the item." *Id.* at 44.

CORC affirmed the Superintendent's decision on March 6, 2013.  (Dkt. No. 26 at 38.) The decision stated:

> [T]he grievant was allowed to retain the religious head covering in question until it was reviewed by the Director of Ministerial, Family & Volunteer Services.  Further, it was determined that it was not approved for Jewish adherents, and the grievant elected to mail it out of the facility when given disposal options on 3/2/13 . . . .
>
> CORC asserts that the employees' appropriate performance of their duties and enforcement of the rules and regulations should not be construed as harassment by the grievant. Further, CORC has not been presented with sufficient evidence to substantiate harassment or

> malfeasance by staff.  CORC notes that the grievant may write to
> whomever he wishes regarding this complaint, as long as they are not
> on his Negative Correspondence and Telephone List.

*Id.*

In this action, Plaintiff claims that Defendants violated his right to freely exercise his religion and his right to due process, and that Defendant Leifeld retaliated against him for filing the grievance.  (Dkt. No. 26.)  Plaintiff requests damages and injunctive relief.  *Id.* at 13-14.

Defendants now move to dismiss.  (Dkt. No. 47.)  Plaintiff has opposed the motion.  (Dkt. No. 50.)  Defendants have filed a reply.  (Dkt. No. 51.)

## II.  LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.    ANALYSIS

Defendants move to dismiss the complaint in its entirety. (Dkt. No. 47.) For the reasons discussed below, I recommend that the Court (A) direct Defendants Waugh, Leifeld, Larkin, Morris, Antonelli, and Bly to answer Plaintiff's claims under the free exercise clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (B) dismiss Plaintiff's due process claims without leave to amend; (C) dismiss the retaliation claim against Defendant Leifeld with leave to amend; (D) dismiss the claims against Defendant DiCairano without leave to amend; (E) dismiss the claim against Defendant Bellamy without leave to amend; and (F) dismiss any claim regarding the functioning of the grievance system without leave to amend.

### A.    Religion Claims

Plaintiff claims that Defendants Waugh, Leifeld, Larkin, Morris, Antonelli, and Bly

violated his right to freely exercise his religion.[2]  (Dkt. No. 26 ¶¶ 33, 47, 56, 65, 68.)  Plaintiff

phrases his complaint in terms of RLUIPA.  *Id.* ¶ 71.  However, because Plaintiff seeks money

damages, which are not available under RLUIPA,[3] the Court and Defendants have also construed

the complaint as asserting a First Amendment free exercise claim.  Defendants move to dismiss

the free exercise/RLUIPA claim on the grounds that (1) Plaintiff's right to exercise his religion

was not substantially burdened; and (2) Defendants had a legitimate penological purpose for their

actions.  (Dkt. No. 47-1 at 3-8.[4])  For the reasons discussed below, I recommend that the Court

deny Defendants' motion to dismiss the First Amendment and RLUIPA claims.

### 1.    First Amendment Free Exercise

Prisoners retain some measure of the constitutional right to the free exercise of religion

guaranteed by the First Amendment.  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).

However, due to the unique concerns of the prison setting, prisoners' free exercise rights must be

balanced against the interests of prison officials engaged in the complex duties of administering

the penal system.  *Id.*  Thus, a prison regulation or individualized decision to deny a prisoner the

ability to engage in a religious exercise "is judged under a reasonableness test less restrictive than

that ordinarily applied [to burdens on fundamental rights]: a regulation that burdens a

[prisoner's] protected right passes constitutional muster if it is reasonably related to legitimate

---

[2]    Plaintiff also asserts that Defendant DiCairano violated his right to freely exercise his religion.  (Dkt. No. 26 ¶ 40.)  However, as discussed below, the factual allegations against Defendant DiCairano amount only to a claim of verbal harassment.

[3]    *Sossamon v. Texas*, 131 S. Ct. 1651 (2011).

[4]    Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)) (punctuation omitted).[5]

To establish a free exercise claim, a prisoner "must show at the threshold that the disputed conduct substantially burdens[6] his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75 (citing *Ford*, 352 F.3d at 591). A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. Here, Defendants concede for the purposes of this motion that Plaintiff's religious beliefs are sincerely held. (Dkt. No. 47-1 at 5.)

A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (punctuation omitted) (holding that Rastafarian prisoner's sincerely held religious belief that he was prohibited from submitting to a test for latent tuberculosis was "substantially burdened" where he was forced to choose between

---

[5]      Although *Turner* involved prison regulations, the Second Circuit has applied the *O'Lone/Turner* analysis to individual decisions that allegedly impinge an inmate's constitutional rights. *Young v. Coughlin*, 866 F.2d 567 (2d Cir. 1989).

[6]      Although the Second Circuit has applied the "substantial burden" test in its most recent prison free exercise cases, it has done so while explicitly refusing to adopt or endorse the test. "The *Ford* court noted that the Circuits apparently are split over whether prisoners must show a substantial burden on their religious exercise in order to maintain free exercise claims. Nevertheless, the *Ford* court held that since the plaintiff had not challenged the application of the substantial burden requirement, the court would proceed as if the requirement applied. Likewise, the *Salahuddin* court noted that '[r]esolution of this appeal does not require us to address Salahuddin's argument that a prisoner's First Amendment free-exercise claim is not governed by the 'substantial burden' threshold requirement,' because defendants 'never proceed to argue that we should find any particular burdened religious practice to be peripheral or tangential to [plaintiff's] religion.' The court then proceeded as if the substantial burden requirement applied." *Pugh v. Goord*, 571 F. Supp. 2d 477, 497 n.10 (S.D.N.Y. 2008)(citations and some punctuation omitted).

"submitting to the test or adhering to [his] beliefs and enduring medical keeplock.").

Defendants argue that Plaintiff's sincere religious beliefs were not substantially burdened because he was only prohibited from wearing a "head covering [that] was more classified as appropriate for inmates with a different religious designation." (Dkt. No. 47-1 at 5.) Plaintiff, Defendants argue, was not precluded "from wearing a head covering appropriate for adherents of plaintiff's registered religion." *Id.* Plaintiff notes, however, that Defendants "failed to consider the individual and unique circumstances which made wearing a yamaka (sic) (normally worn by those of the Jewish faith) unrealistic." (Dkt. No. 50 at 4.) Plaintiff appears to assert that a standard-sized yarmulke will not fit over his hair (Dkt. No. 26 ¶¶ 19, 22) and thus that the only way for him to honor both his Jamaican heritage and his Jewish faith is by wearing the larger head covering. (Dkt. No. 50 at 4.) Accepting this assertion as true, as the Court must for the purposes of this motion to dismiss, Plaintiff has asserted facts plausibly suggesting that Defendants' refusal to allow him to wear the larger head covering substantially burdened his sincerely held religious belief.

Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted). Although the defendants' burden is "relatively limited," the legitimate penological interest advanced must have been the *actual* reason for the defendants' actions. *Id.* at 276-77. The law requires that "prison officials actually had, not just could have had, a legitimate reason for burdening protected activity." *Id*. at 277. "Post hoc

justifications with no record support will not suffice." *Id.*

Defendants argue that their interest in institutional security justified prohibiting Plaintiff from wearing his head covering. (Dkt. No. 47-1 at 5-7.) Defendants cite *Benjamin v. Coughlin*, 905 F.2d 571, 578-79 (2d Cir. 1990), for the proposition that large head coverings, such as those worn by Rastafarians, are "capable of concealing contraband." (Dkt. No. 47-1 at 6.) Defendants argue that "the pleadings make clear that plaintiff's head covering presented the same risk to institutional security as the Rastafarian head coverings did in the *Benjamin* case." *Id.* at 6-7.

*Benjamin* is distinguishable from at the case at bar for two reasons. First, the procedural posture of the cases is quite different. In *Benjamin*, the district court conducted a bench trial in which prison officials presented evidence about the security risks of the head coverings. Thus, the court was able to consider evidence and weigh credibility. Here, the case is before the Court on a motion to dismiss, and thus the Court must accept all facts pleaded in the complaint as true and read all inferences in Plaintiff's favor. Second, the cases are factually distinguishable. In *Benjamin*, DOCCS facilities limited or entirely prohibited the wearing of Rastafarian head coverings by any inmate, including registered Rastafarians, on security grounds. Here, Defendants apparently allow Rastafarian inmates to wear the larger head coverings. They repeatedly advised Plaintiff that the reason he was not allowed to wear the larger head covering was because he is Jewish and not Rastafarian. (Dkt. No. 26 at 21, 38, 42.) As Plaintiff phrases it in his opposition to the motion to dismiss, "[T]here has been no claims . . . that he was harassed about his head covering **because of any institutional risk**. The only claims forwarded . . . are that the defendant did not believe it was appropriate for the Jewish faith." (Dkt. No. 50 at 6, emphasis in original.) Neither the face of the complaint nor the documents attached thereto

allege any facts plausibly suggesting that Defendants expressed a security rationale for denying Plaintiff the right to wear his head covering. In other words, while in *Benjamin* the prison officials presented evidence of security concerns motivating their actions, here the record construed in the light most favorable to Plaintiff plausibly suggests that Defendants were not motivated by security concerns. Accordingly, Defendants have not met their burden, at this stage in the litigation, of identifying the legitimate penological interests that justified the impinging conduct. Therefore, it is recommended that the Court deny Defendants' motion to dismiss Plaintiff's free exercise claim.

2.    <u>RLUIPA</u>

Plaintiff has also asserted his religious claim under RLUIPA. (Dkt. No. 26 ¶ 71.) RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution[7] . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). As discussed above, Plaintiff has alleged facts plausibly suggesting that Defendants placed a substantial burden on his religious exercise. As discussed above, Defendants are not entitled, at this point in the litigation, to a finding that there was a legitimate penological reason for their actions. Accordingly, they have also not demonstrated that they had a compelling governmental interest and took the least restrictive

---

[7]      An "institution" is any facility or institution that is "owned, operated, or managed by, or provides services on behalf of any State" and is, *inter alia*, "for persons who are mentally ill, disabled, or retarded, or chronically ill or handicapped" or "a jail, prison, or other correctional facility." 42 U.S.C. § 1997(1) (2010).

means of furthering that interest.  Therefore, I recommend that the Court deny Defendants'

motion to dismiss Plaintiff's RLUIPA claim.

### 3.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity.  (Dkt. No. 47-1 at 13-14.)

For the reasons discussed below, I recommend that the Court reject this argument at this time.

Defendants in civil rights actions are entitled to qualified immunity from civil damages

"unless defendant's alleged conduct, when committed, violated 'clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781

F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). Thus,

the qualified immunity inquiry in a prisoner civil rights case involves two issues: (1) "whether

the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation";

and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) (citations omitted),

*accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations omitted).

As discussed above, the facts viewed in the light most favorable to Plaintiff establish a

constitutional violation at this point in the litigation.[8]  Thus, the Court must address the second

question: whether it would be clear to a reasonable officer that his conduct was lawful in the

situation confronted.

 In determining whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation confronted, courts in this circuit consider three factors: (1) whether the

_____

[8]     I express no opinion on whether Plaintiff's claims could survive a motion for
summary judgment.

right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted).

In determining whether the right in question in a particular case was defined with reasonable specificity, courts must avoid "framing the constitutional right at too broad a level of generality." *Redd v. Wright*, 597 F.3d 532, 536 (2d. Cir. 2010). Characterizing the right in question in a prisoner's First Amendment religion case as the right "not to be subjected to punishment . . . as a consequence of his religious beliefs," for example, is not "reasonably specific." *Id.* On the other hand, "[t]his does not mean that there must be a factual equivalency between the case at issue and prior cases. The 'salient question' instead is whether the case law at the time in question would have put reasonable officers on 'fair warning' that their conduct violated the plaintiff's rights." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 60 (2d Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Here, at least for the purposes of this motion, Defendants have not demonstrated that they are entitled to qualified immunity. It is well-established that "prison officials may not substantially burden inmates' right to religious exercise without some justification." *Salahuddin*, 467 F.3d at 275-76. Here, as discussed above, Defendants have not, at this point in the litigation, shown that any legitimate penological reason justified their refusal to allow Plaintiff to wear his head covering. Therefore, I recommend that the Court reject Defendants' qualified immunity argument at this time. *See, e.g., Williams v. Leonard*, No. 9:11-CV-1158 (TJM/TWD), 2013

U.S. Dist. LEXIS 142051, at *10-11, 2013 WL 5466191, at *4 (N.D.N.Y. Sept. 30, 2013)

(rejecting qualified immunity defense at motion to dismiss stage where prison officials had not

demonstrated a legitimate penological interest for a restriction on religious clothing).[9]

**B.      Due Process Claims**

Plaintiff claims that Defendants Leifeld, Larkin, Morris, Antonelli, and Bly violated his

right to due process.  (Dkt. No. 26 ¶¶ 44, 47, 56, 65, 68.)  It is not clear from the face of the

complaint whether Plaintiff intends to assert a procedural due process claim or a substantive due

process claim, although he asserts in opposition to the motion to dismiss that he intended to

assert both.  (Dkt. No. 50 at 8-9.)  Defendants move to dismiss Plaintiff's due process claims,

and have addressed both the procedural and the substantive aspects of the Due Process Clause.

(Dkt. No. 47-1 at 11-13.)  For the reasons discussed below, I recommend that the Court dismiss

these claims without leave to amend.

1.      <u>Procedural Due Process</u>

Plaintiff cannot state a procedural due process claim regarding the loss of his head

covering.  "[A]n unauthorized intentional deprivation of property by a state employee does not

constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer,*

468 U.S. 517, 533 (1984) (emphasis omitted).  This Circuit has held that "confiscation . . . [does]

not constitute a Fourteenth Amendment violation for loss of property because of the availability

of state court post-deprivation remedies" in the New York Court of Claims.  *Koehl v. Dalsheim,*

---

[9]      The Court will provide Plaintiff with a copy of all unpublished decisions cited
herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d
Cir. 2009) (per curiam).

85 F.3d 86, 88 (2d Cir. 1996); *Jackson v. Burke,* 256 F.3d 93, 96 (2d Cir. 2001); *see also Parratt v. Taylor,* 451 U.S. 527, 544 (1981) ("Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process."), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Therefore, it is recommended that the Court grant the motion to dismiss Plaintiff's procedural due process claim.

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* Here, better pleading would not cure Plaintiff's procedural due process claim. Therefore, it is recommended that the Court dismiss this claim without leave to amend.

2.     Substantive Due Process

Construed broadly, the complaint may also assert a substantive due process claim. However, it does not allege facts plausibly suggesting such a claim. "To state a substantive due process claim, a plaintiff must allege that (1) the complained-of state action compromised a constitutionally-protected liberty or property right, and (2) the state action that deprived him of that interest was oppressive or arbitrary." *Rother v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013). Regarding the second factor,

"[s]ubstantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). Very few conditions of prison life have been found "shocking" enough to violate a prisoner's right to substantive due process. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 479 n.4, 484 (1995) (noting that an involuntary transfer to a state mental hospital or the involuntary administration of psychotropic drugs "give rise to protection by the Due Process Clause of its own force," i.e. state a substantive due process claim); *Tavares v. Amato*, 954 F. Supp. 2d 79, 98 (N.D.N.Y. 2013) (placement of inmate in administrative segregation for 132 days based solely on nature of his criminal record possibly "incorrect" or "ill-advised," but not conscience-shocking). Here, Plaintiff has not alleged any facts plausibly suggesting that Defendants' behavior was "shocking" in a constitutional sense.

Plaintiff's substantive due process claim fails for another reason. "If a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). *See also Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."). Here, as discussed above, the complaint states a First Amendment free exercise claim. As such, it is not appropriately analyzed under the rubric of substantive due process. Therefore, I recommend that the Court dismiss this claim without leave to amend.

## C.     Retaliation Claim

Plaintiff alleges that Defendant Leifeld retaliated against him for filing a grievance against Defendant DiCairano.  (Dkt. No. 26 ¶ 44.)  Specifically, Plaintiff alleges that "those intentional actions by defendant Leifeld were taken for the sole purpose of retaliating against Thomas for filing a grievance against Leifeld's co-worker DiCairano for harassment." *Id.* Defendants move to dismiss this claim.  (Dkt. No. 47-1 at 8-9.)  For the reasons discussed below, I recommend that the Court grant Defendants' motion to dismiss this claim with leave to amend.

Claims of retaliation find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.   Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was

a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

Here, Plaintiff has alleged facts plausibly suggesting the first element. The filing of a grievance against prison officials is constitutionally protected conduct. *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). Plaintiff alleges that he filed a grievance against Defendant DiCairano. (Dkt. No. 26 at 27-28.)

Regarding the second element, the Second Circuit defines "'adverse action' objectively, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 320 F.3d 346, 2003 U.S. App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)). The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Id.* For the purposes of this motion, the Court will assume that denying a grievance constitutes adverse action.

Regarding the third element, several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)). Those factors include: (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his or

her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* Here, Plaintiff has alleged facts plausibly suggesting temporal proximity between his protected conduct (filing the grievance) and Defendant Leifeld's adverse action (denying the grievance). Plaintiff filed the grievance on August 6, 2012. (Dkt. No. 26 at 27.) Defendant Leifeld sent Plaintiff a memorandum indicating his involvement in the matter less than two months later. (Dkt. No. 26 at 40.) The Second Circuit has held that the passage of "only six months" is sufficient to support a finding of temporal proximity. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001)). However, mere temporal proximity is not enough to establish a causal connection. The Second Circuit has held that where "timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).[10] Here, Plaintiff has not alleged any facts other than temporal proximity plausibly suggesting that Defendant Leifeld denied Plaintiff's grievance or sent pictures of Plaintiff to Albany because Plaintiff filed a grievance against Defendant DiCairano. Plaintiff has not, for instance, alleged that Defendant Leifeld made any statements to that effect. Plaintiff has not alleged that Defendant Leifeld's decision was overturned at any higher level. In fact, Plaintiff admits on the face of the complaint that Defendant Leifeld's decision was affirmed. (Dkt. No. 26 at 32, 38.) Thus, Plaintiff has not alleged facts plausibly

---

[10]    *Slattery* was an employment case. The Second Circuit routinely cites to employment cases when discussing retaliation in the prison law context. *See e.g. Espinal*, 558 F.3d at 129 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Thus, it is appropriate to apply the *Slattery* rule here.

suggesting a causal connection between the protected conduct and the adverse action. Therefore, I recommend that the Court dismiss the retaliation claim with leave to amend.

### D. Claim Against Defendant DiCairano

Plaintiff alleges that Defendant Sergeant DiCairano stopped him on two occasions during the summer of 2012 and verbally harassed him about his head covering, stating that she was going to "take the matter to Albany" in order to get the result of the disciplinary hearing changed. (Dkt. No. 26 ¶¶ 9, 34-38.) Defendants argue that this claim should be dismissed. (Dkt. No. 47-1 at 7-8.) Defendants are correct. Verbal harassment, in and of itself, does not rise to the level of a constitutional violation. *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983."). Therefore, I recommend that the Court dismiss this claim without leave to amend.

### E. Claim Against Defendant Bellamy

Plaintiff alleges that the members of CORC violated his right to exercise his religion by directing that Plaintiff destroy his head covering or send it home. (Dkt. No. 26 ¶¶ 57-58.) The identity of the CORC members who reached that decision is not clear from the face of CORC's decision. *Id.* at 38. The complaint states that Defendant Bellamy is "appropriately named in this action for the purpose of discovery to ascertain the voting members, or their designees, present in deciding the plaintiff's grievance." *Id.* ¶ 55. Defendants move to dismiss Defendant Bellamy for lack of personal involvement. (Dkt. No. 47-1 at 10-11.) For the reasons discussed below, I recommend that the Court grant Defendants' motion as to this claim without leave to amend.

Under Second Circuit precedent, "'personal involvement of defendants in alleged

20

constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is generally insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

However, when a prisoner does not know the identities of any of the individuals who allegedly violated his constitutional rights, it is appropriate to maintain "supervisory personnel as defendants . . . until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability." *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998). "After an opportunity for discovery, undisputed allegations that the supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case, but such dismissal is premature where the opportunity to identify those involved has not yet been accorded." *Id*. at 921-22 (citations omitted). *See also Murphy v. Goord*, 445 F. Supp. 2d 261 (W.D.N.Y. 2006) (denying superintendent's motion for judgment on the pleadings on personal involvement grounds and allowing plaintiff to proceed with discovery to identify the Doe defendants).

Plaintiff states in opposition to the motion to dismiss that "once, through discovery, he

has ascertained the voting members that decided the plaintiff's grievance, he will move this Honorable Court to amend his complaint for the purposes of adding said defendants to this complaint." (Dkt. No. 50 at 8.) Thus, he argues, Defendant Bellamy should remain in the action at this time. However, Plaintiff's case is distinguishable from *Davis* and *Murphy*. In *Davis* and *Murphy*, the plaintiffs did not know the identities of any of the prison employees who allegedly violated their rights. The uninvolved supervisory defendants were the sole named defendants in those cases. Here, Plaintiff knows the identities of several of the individuals who allegedly violated his rights. Thus, he will be able to seek information about the identity of the CORC panel members from the named, personally involved defendants. Therefore, I recommend that the Court grant Defendants' motion to dismiss the claim against Defendant Bellamy without leave to amend.

### F. Claim Regarding Functioning of the Grievance Process

Defendants argue that "[t]o the extent plaintiff claims that Leifeld, Larkin, and Bellamy failed to properly hear and/or consider his grievances, or appeals therefrom, those claims should be dismissed because there is no constitutional right to the grievance process." (Dkt. No. 47-1 at 8.) To the extent that Plaintiff asserts such a claim, Defendants are correct.

Prisoners do not have a due process right to a thorough investigation of grievances.

*Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003).

> The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances. However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim. If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the

> government for redress of that claim. Therefore, the refusal to
> process an inmate's grievance or failure to see to it that grievances are
> properly processed does not create a claim under § 1983.

*Shell v. Brzezniak,* 365 F. Supp. 2d 362, 369-70 (W.D.N.Y. 2005) (citations omitted). Therefore,

I recommend that the Court dismiss any such claims without leave to amend.

   **ACCORDINGLY**, it is

   **RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt.

No. 47) be **<u>GRANTED IN PART AND DENIED IN PART</u>**. Specifically, it is recommended

that the Court (A) direct Defendants Waugh, Leifeld, Larkin, Morris, Antonelli, and Bly to

answer Plaintiff's claims under the free exercise clause of the First Amendment and RLUIPA;

(B) dismiss Plaintiff's due process claims without leave to amend; (C) dismiss the retaliation

claim against Defendant Leifeld with leave to amend; (D) dismiss the claims against Defendant

DiCairano without leave to amend; (E) dismiss the claim against Defendant Bellamy without

leave to amend; and (F) dismiss any claim regarding the functioning of the grievance system

without leave to amend; and it is further

   **ORDERED** that the Clerk provide Plaintiff with a copy of *Williams v. Leonard*, No.

9:11-CV-1158 (TJM/TWD), 2013 U.S. Dist. LEXIS 142051, 2013 WL 5466191 (N.D.N.Y. Sept.

30, 2013).

   Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL</u>**

**<u>PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam));

28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: July 24, 2015
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2013 WL 5466191
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Richard WILLIAMS, Plaintiff,

v.

Mark LEONARD, Imam Khalil Abdul
Kabir, T. Lavalley, Joe Haskell, Defendants.

No. 9:11–CV–1158.     |     Sept. 30, 2013.

**Attorneys and Law Firms**

Richard Williams, Comstock, NY, pro se.

Cathy Y. Sheehan, New York State Attorney General, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

## I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to this Court to the Hon. Thérèse Wiley Dancks, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c). In her Report–Recommendation [dkt. # 20], Magistrate Judge Dancks recommends that Defendants' motion to dismiss for failure to state a claim [dkt. # 12] be granted in part and denied in part. Specifically, she recommends that the retaliation claim regarding meal prices be dismissed with leave to amend, and that the following claims be dismissed without leave to amend: (1) the claims for monetary damages against Defendants in their official capacities; (2) any claim asserted on behalf of other inmates and/or their guests; (3) the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims for monetary damages regarding the length of Plaintiff's pants; (4) the First Amendment, RLUIPA, and Equal Protection Clause claims for monetary damages regarding Plaintiff's family's participation with him during the Eid el-Adha holy day; and (5) any claim asserting a generalized right to visitation. Dkt. # 20 at 32–33. In addition, Magistrate Judge Dancks recommends that Defendants be directed to answer the following claims: (1) the First Amendment claim for

injunctive relief regarding the length of Plaintiff's pants; (2) the RLUIPA claim for injunctive relief regarding the length of Plaintiff's pants; (3) the First Amendment claim for injunctive relief regarding family participation in Eid el-Adha; (4) the RLUIPA claim for injunctive relief regarding family participation in Eid el-Adha; (5) the equal protection claim for injunctive relief regarding family participation in Eid el-Adha; and (6) the equal protection claim for damages and injunctive relief regarding meal prices. *Id.* at 33.Plaintiff has filed an objection to Magistrate Judge Dancks' report. Dkt. # 21.

## II. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b); *see also United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997) (The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.)."[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Machicote v. Ercole,* no 06 Civ. 13320(DAB)(JCF), 2011 WL 3809920, at \* 2 (S.D.N.Y., Aug. 25, 2011) (citations omitted) (interior quotation marks omitted); *DiPilato v. 7–Eleven, Inc.,* 662 F.Supp.2d 333, 340 (S.D.N.Y.2009) (same).

**\*2** General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. *Farid v. Bouey,* 554 F.Supp.2d 301, 306 n. 2 (N.D.N.Y.2008); see *Frankel v. N.Y.C.,* Nos. 06 Civ. 5450(LTS)(DFE), 07 Civ. 3436(LTS) (DFE), 2009 WL 465645 at \*2 (S.D.N.Y. Feb. 25, 2009). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

## III. DISCUSSION

### a. Plaintiff's Objections to the Report–Recommendation

Plaintiff's sole objection to Magistrate Judge Dancks' Report–Recommendation is with respect to the application of qualified immunity. *See generally* dkt. # 21. Specifically, Plaintiff objects to the recommendation that the First Amendment and RLUIPA claims for monetary damages concerning Plaintiff's request to wear his pants above his ankles, and Plaintiff's First Amendment, RLUIPA, and Equal Protection Clause claims for monetary damages concerning his family's participation in the Eid El–Adha holy day at the correctional facility, be dismissed on account of qualified immunity. Dkt. # 20 at 17–18, 24–27. Plaintiff contends that in determining "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted ...," *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (internal quotation marks omitted), [1] Magistrate Judge Dancks framed the federally protected rights at issue too narrowly. Dkt. # 21 at 2–3.

### *1. Plaintiff's Request to Wear his Pants Above his Ankles*

Plaintiff asserts that his religious beliefs require him to wear his pants rolled above his ankles at all times, but alleges that Defendants initially refused to allow this practice at all, and then, sometime in 2009, allowed the practice but only while engaged in religious observations. It also appears that sometime in 2010, Defendants allowed Plaintiff to wear his pants at ankle length at all times, purportedly because of advice given by a nondefendant imam and the Office of Ministerial Services.

There is no dispute that Magistrate Judge Dancks correctly determined that Plaintiff pleaded legally plausible First Amendment and RLUIPA claims related to pants length, see dkt. # 20 pp. 14–15, 18, and set forth the proper standard for determining whether Defendants should be granted qualified immunity. *See id.* at pp. 15–17.

As to the application of qualified immunity, Magistrate Judge Dancks concluded:

> [T]he right at question here is the right for Muslim inmates to wear their pants above their ankles at all times. The decisional law of the Supreme Court and the Second Circuit does not support the existence of the right in question. At the time of the Defendants' actions there were no cases dealing substantively with the issue of the length of Muslim

inmates' pants. Under preexisting law a reasonable Defendant would not have understood that his or her acts were unlawful. Further, it was objectively reasonable for Defendants at the time of the challenged action to believe their acts were lawful. Defendants conferred with the Great Meadows Imam and outside Imams regarding the policy and apparently received their support. Thus, it would not be clear to a reasonable officer that his conduct was unlawful at the time.

**\*3** *Id.* at 17.

Magistrate Judge Dancks recommended that "the Court find that Defendants are entitled to qualified immunity from the First Amendment [and RLUIPA claims] against them for civil damages regarding the length of Plaintiff's pants and dismiss that claim accordingly. Because better pleading would not cure this defect, I recommend that the Court dismiss the claim without leave to amend."*Id.* pp. 17–18.Plaintiff argues that Magistrate Judge Dancks framed the right at issue too narrowly, and, therefore, the Court should reject the recommendation.

Before addressing whether the right in issue was too narrowly framed, it is imperative to recognize that Magistrate Judge Dancks found two bases to apply qualified immunity–1) that the right in issue was not recognized by the Second Circuit or the Supreme Court; and 2) that the facts presented to Defendants would have not lead reasonable officers to believe their conduct was unlawful in the situation they confronted. The second of these alone is a proper and sufficient basis for the grant of qualified immunity, but the facts alleged in the Complaint are unclear as to when Defendants were advised that the practice of at-ankle-length pants outside of religious observations and above-ankle-length pants during religious observations was in keeping with Plaintiff's religious beliefs. Moreover, the allegations in the Complaint indicate that before Defendants were purportedly advised of the propriety of the at-ankle-length/above-anklelength protocol, they were advised by an iman that Muslims who practiced Islam should be allowed to wear their pants above the ankle at all times. See dkt. # 20, p. 6. Thus, due to the conflicting factual issues regarding the propriety of different pant lengths for Muslim inmates, qualified immunity cannot be granted on this issue at this time.

Turning to whether the right in issue was clearly established, Magistrate Judge Dancks correctly indicates that "courts must avoid 'framing the constitutional right at too broad a level of generality .' " Dkt. # 20 at 16 (citing *Redd v. Wright,* 597 F.3d 532, 536 (2d Cir.2010)). However, while *Redd* requires that the constitutional issue be framed with "reasonable specificity," *Redd,* 597 F.3d at 536, the right must not be framed too narrowly. "Describing the right at issue overly broadly eviscerates the protections of qualified immunity; describing it too narrowly negates the possibility of redress." *Nagle v. Marron,* 663 F.3d 100, 114 (2d Cir.2011).

> In order to prevent the margin of immunity from overshadowing our interests in recovery ... the right in question must not be restricted to the factual circumstances under which it has been established. Thus, the Supreme Court has declined to say that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful," and has, instead, chosen a standard that excludes such immunity if "in the light of pre-existing law the unlawfulness [is] apparent."*Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 129 (2d Cir.2004) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)); *see also Zagaja v. Village of Freeport,* No. 10–cv–3660 (JFB) (WDW), 2013 WL 2405440, at *15 (E.D.N.Y. June 3, 2013) (same).

**\*4** It is well established in the Second Circuit that "prison officials may not substantially burden inmates' right to religious exercise without some justification...."*Salahuddin v. Goord,* 467 F.3d 263, 275–76 (2d Cir.2006); *see also Redd,* 597 F.3d at 537. Magistrate Judge Dancks correctly indicates that "the facts viewed in the light most favorable to Plaintiff establish a constitutional violation" as to the pants length issue, dkt. # 20 at 16, and that "Defendants ... have not identified [at this stage of the litigation] any legitimate penological reason for their refusal to allow Plaintiff to wear his pants at the length mandated by his religion."*Id.* at 15.Absent a legitimate penological interest for the belowankles requirement (which, on this Rule 12(b) (6) motion, the Court must assume did not exist), Defendants could have reasonably anticipated before that their refusals to allow Plaintiff to wear his pants above his ankles at all times substantially burdened his right to religious exercise without justification. *See Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir.1996) (A prisoner's sincerely held religious belief is "substantially burdened" "where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."). Thus, in light of pre-existing law, see e.g.

*Salahuddin,* 467 F.3d at 275–76, the unlawfulness of the conduct would be apparent. This is so even though there are no cases from the Second Circuit or Supreme Court that specifically address whether a Muslim inmate may wear his pants at a particular length. Accordingly, qualified immunity on this claim must be denied at this time.

Because rights under RLUIPA are addressed substantially the same as rights under the First Amendment, the same conclusion is reached as to the RLUIPA claim based upon pants length. *See* RLUIPA, 42 U.S.C. § 2000cc–1(a) ("No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.").

To be clear, the Court is not saying that Defendants may not be entitled to qualified immunity on these claims, but only that, at this stage of the litigation, existing factual questions impacting the pants length rule prohibits the application of this immunity. *See McKenna v. Wright,* 386 F.3d 432, 436 (2d. Cir.2004); [2] *Walker v. Mendoza,* No. 00–CV–93(JG), 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000) ("[I]t is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).") (citing *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983)).

### 2. Plaintiff's Request for Family Participation in Eid El–Adha

**\*5** Plaintiff alleges that his religious beliefs require him to observe the Eid el-Adha holy day with his family but has been denied the ability to do so. Plaintiff also alleges that Native American inmates are allowed to participate with family members during nine religious holy days whereas Muslims are limited to one holy day that is not Eid el-Adha. Dkt. # 20 at 19. Plaintiff argues that Magistrate Judge Dancks framed the right at issue too narrowly when applying qualified immunity to Plaintiff's First Amendment, RLUIPA, and Equal Protection Clause claims for monetary damages resulting from Defendants' actions in prohibiting Plaintiff's family from participating during Eid el-Adha. [3]

On the First Amendment claim, Magistrate Judge Dancks correctly observed that "[t]he face of the complaint pleads

facts plausibly suggesting that Defendants substantially burdened Plaintiff's sincere religious belief that family participation is required at Eid elAdha ...," and that Defendants have failed to identify a legitimate penological interest justifying this policy. Dkt. # 20 at 23. However, for the reasons discussed above with regard to the application of qualified immunity on the pants length claim, the Court cannot conclude at this stage of the litigation that Defendants are entitled to qualified immunity. The absence in the record of a legitimate penological interest justifying the exclusion of family members from this particular religious holiday-but not others-creates a question of fact preventing the application of immunity on this claim at this time.

With respect to the RLUIPA claim, Magistrate Judge Dancks correctly concluded:

> Plaintiff has alleged facts plausibly suggesting that Defendants have placed a substantial burden on his religious exercise. Moreover, Defendants have not, at this point in the litigation, demonstrated what governmental interest supports the policy regarding family participation in Eid el-Adha. Defendants have thus failed to establish that the burden on Plaintiff was in furtherance of a compelling government interest or that it was the least restrictive means of furthering this compelling government interest. Therefore, Plaintiff has alleged facts plausibly suggesting that Defendants violated his rights under RLUIPA.

Dkt. # 20 at 25.

For the same reasons as discussed above, it is premature to award Defendants qualified immunity on this claim.

On the Equal Protection Clause claim, Magistrate Judge Dancks correctly concluded that the Equal Protection Clause " 'bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " Dkt. # 20 at 26 (quoting *Bizzarro v. Miranda,* 394 F.3d 82, 86

(2d Cir.2005) (internal quotation marks omitted); *see also LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir.1980) (same). On the present record, it is unclear the basis for the alleged disparate treatment between Islamic prisoners and those of other religious faiths as to the number of holy days that family members may participate with a prisoner. Assuming that a disparity exists on the basis of an impermissible consideration, as the Court must at this stage of the litigation, reasonable officers could anticipate that their actions violated Plaintiff's Equal Protection Clause rights even without a case precisely on point. *See .e.g. Bizzarro,* 394 F.3d at 86. Thus, qualified immunity on this claim must be denied as premature.

### b. Remainder of the Report–Recommendation

**\*6** With respect to all other findings in Magistrate Dancks' Report–Recommendation, neither party has lodged any objections and the time for doing so has expired. After examining the record, this Court has determined that the Report–Recommendation is not subject to attack for plain error or manifest injustice on any of these recommendations. findings. Therefore, the Court adopts these portions of the Report–Recommendation.

### IV. CONCLUSION

For the reasons discussed above, the Court adopts Magistrate Judge Dancks' Report–Recommendation [dkt. # 20] in part. The Court **GRANTS** Defendants' motion to dismiss [dkt. # 12] with respect to: (1) the retaliation claim regarding meal prices; (2) the claims for damages against Defendants in their official capacities; (3) any claim asserted on behalf of other inmates and/or their guests; and (4) any claim asserting a generalized right to visitation. The (1) retaliation claim regarding meal prices is **DISMISSED with leave to amend,** and the (2) claims for damages against Defendants in their official capacities; (3) claims asserted on behalf of other inmates and/or their guests; and (4) any claim asserting a generalized right to visitation are **DISMISSED without leave to amend.**

The Court **DENIES** Defendants' motion to dismiss [dkt. # 12] with respect to (1) the First Amendment claim for injunctive relief regarding the length of Plaintiff's pants; (2) the RLUIPA claim for injunctive relief regarding the length of Plaintiff's pants; (3) the First Amendment claim for injunctive relief regarding family participation in Eid el-Adha; (4) the RLUIPA claim for injunctive relief regarding family participation in Eid el-Adha; (5) the Equal Protection Clause

claim for injunctive relief regarding family participation in Eid elAdha; (6) the Equal Protection Clause claim for damages and injunctive relief regarding meal prices; (7) the First Amendment and RLUIPA claims for damages regarding the length that Plaintiff may wear his pants while in general population; and (8) the First Amendment, RLUIPA, and Equal Protection Clause claims for damages regarding family participation in the Eid el-Adha observation at the correctional facility.

**Defendants are ordered to answer each of the remaining claims within thirty (30) days from the date of this Decision and Order.**

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2013 WL 5466191

---

Footnotes

1  This is the second prong of the two prong qualified immunity test. The first prong requires the court to consider "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation...." Dkt. # 20 at 15 (citing *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004)). Magistrate Judge Dancks concluded that this first prong was satisfied on all five claims at issue in this objection. See Dkt. # 20 at 15–16, 18, 23–26.

2  The Second Circuit noted in *McKenna,*

   a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.

   386 F.3d at 436 (citations and internal quotation marks omitted).

3  With respect to the First Amendment claim for damages, Magistrate Judge Dancks concluded that Defendants were entitled to qualified immunity because " 'there was no clearly established decisional law of the Supreme Court or of the Second Circuit that ... allowed family visitation during the Eid prayer festival.' " Dkt. # 20 at 24 (quoting dkt. # 12–1 at 10). Similarly, with respect to the RLUIPA claim for damages, Magistrate Judge Dancks concluded that Defendants were entitled to qualified immunity because "[t]here is no authority from the Second Circuit or the Supreme Court supporting the right of Muslim inmates to have family present at all religious events." *Id.* at 25.With respect to the Equal Protection Clause claims, Magistrate Judge Dancks concluded that "[f]or the reasons discussed above regarding the First Amendment and RLUIPA, Defendants are entitled to qualified immunity from Plaintiff's equal protection claim for damages regarding family participation in Eid el-Adha." Dkt. # 20 at 26–27.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.