**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ERROL THOMAS,**

                    **Plaintiff,**

  vs.                                                    9:13-cv-00321
                                                             (MAD/TWD)

**F. WAUGH,** *Eastern Correctional Facility,*
**LEIFELD,** *Sergeant, Eastern Correctional*
*Facility*, **RONALD LARKIN,** *Superintendent, Eastern*
*Correctional Facility,* **CHERYL MORRIS,**
*New York State Department of Corrections and*
*Community Services,* **JOHN N. ANTONELLI,** *IGP*
*Coordinator, Eastern Correctional Facility, and*
**BLY,** *Assistant Commissioner, NYS DOCCS,*

                    **Defendants.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**ERROL THOMAS**
96-A-7903
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, New York 12788
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**        **KYLE W. STURGESS, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

# DECISION AND ORDER

## I. INTRODUCTION

    On March 21, 2013, Plaintiff *pro se* Errol Thomas ("Plaintiff"), an inmate in the custody

of the New York State Department of Corrections and Community Supervision ("DOCCS"),

commenced this action in the Northern District of New York, pursuant to 42 U.S.C. § 1983, asserting claims arising out of his confinement at Eastern Correctional Facility ("Eastern CF"). *See* Dkt. No. 1.[1] On November 13, 2015, Plaintiff filed a second amended complaint. *See* Dkt. No. 63. After an initial review of the second amended complaint for facial sufficiency, the following claims remained: free exercise claims under the First Amendment and Religious Land Use and Incarcerated Persons Act ("RLUIPA"), 42 U.S.C. § 1997e *et seq.*, against the above named Defendants. *See* Dkt. No. 69.

On June 9, 2017, after the close of discovery, Defendants moved for summary judgment. *See* Dkt. No. 89. In a February 28, 2018, Report-Recommendation and Order, Magistrate Judge Dancks recommended that the Court grant in part and deny in part Defendants' motion for summary judgment. *See* Dkt. No. 91 at 33. On March 14, 2018, Defendants filed objections to Magistrate Judge Dancks' Report-Recommendation and Order. *See* Dkt. No. 92. Plaintiff did not file objections to Magistrate Dancks' Report-Recommendation and Order.

Currently before the Court is Magistrate Judge Dancks' Report-Recommendation and Order and Defendants' objections thereto. For the reasons stated below, the Court adopts Magistrate Judge Dancks' Report-Recommendation and Order in its entirety.

## II. BACKGROUND

**A.    Plaintiff's "Tam" and Administrative Grievance**[2]

---

[1] The cited page numbers for docket entries in this Decision and Order refer to those assigned by the Court's electronic filing system ("ECF").

[2] The following description of this complaint's factual and administrative history focuses on the facts relevant to Defendants' objections to Magistrate Judge Dancks' February 28, 2018 Report-Recommendation and Order. A more comprehensive account of the facts can be found in the Report-Recommendation and Order.

2

Plaintiff is of Jamaican heritage and a member of the Jewish faith. *See* Dkt. No. 89-5 at 16. One requirement of the Jewish religion is that men must wear a head covering. *See* Dkt. No. 68 at ¶¶ 20-22. Plaintiff also honors his Jamaican heritage by wearing his hair in dreadlocks, a hairstyle that makes wearing a kippah, the traditional Jewish head covering, difficult. *See* Dkt. No. 50 at 4. In order to keep his faith and honor his heritage, Plaintiff wears a tam, a head covering similar to the Rastifarian Tsalot-Kob. *See id.* However, because tams are not typically worn by Jewish men and, at the times relevant to this case, DOCCS restricted Tsalot-Kobs to Rastifarians, Plaintiff encountered trouble with several of Eastern CF's guards. *See* Dkt. No. 89-3 at 5. In March 2012, Plaintiff was charged with a disciplinary infraction for wearing a tam. Dkt. No. 89-2 at 150-156. On March 27, 2012, Eastern CF's rabbi testified that the tam, while not an "ordinary" kippah, "satisfied the [Jewish faith's] religious requirements." *Id.* at 156. As a result of this testimony, Plaintiff was found not guilty and was allowed to wear the tam. *See id.* To prevent further problems with correctional officers, Plaintiff was given documentation stating he was permitted to wear the tam. *See* Dkt. No. 63 at ¶ 30.

After this, most correctional officers would leave Plaintiff alone after he showed them his documentation. *See* Dkt. No. 89-5 at 15. However, Defendant DiCairano repeatedly challenged him for wearing the tam as it was "not a Jewish Head-covering" despite being shown his paperwork. *See id.* Defendant DiCairano also told Plaintiff "that she was going to take a picture of [his] religious head covering and send it to Albany." *Id.*

On August 7, 2012, Plaintiff filed a grievance against Defendant DiCairano and asked that she face professional sanctions for her conduct. *See* Dkt. No. 89-5 at 10, 16. The Inmate Grievance Resolution Committee ("IGRC") found that Plaintiff's requested sanctions were "unattainable through IGRC." *Id.* at 18. IGRC also decided to ask the central office whether

3

Plaintiff was permitted to wear the tam.  *See id.*  Plaintiff appealed this decision to Superintendent Larkin and then to the Central Office Review Committee ("CORC"), both which denied his appeal.  *See* Dkt. No. 26 at 32; Dkt. No. 89-5 at 18.

In late August 2012, Ed Demo, a senior investigator for DOCCS' Special Operations Office contacted Defendant Morris regarding IGRC's request for clarification on Plaintiff's tam.  *See* Dkt. No. 89-6 at 4.  Upon review, Defendant Morris concluded that

> it was clear that Plaintiff's head coverings . . . was a Tsalot-Kob, and not for a member of the Jewish faith[, but] . . . . deferred to DOCCS' security personnel regarding whether the tam could be kept by the Plaintiff, as [she] was unsure at that time of the permissible quantity of headgear to be owned by inmates at any one time.

*Id.* at 4-5.

For several months after this decision, Plaintiff was permitted to continue wearing his tam within his cell pursuant to a compromise reached with Defendant Leifeld, Plaintiff, and Eastern CF's rabbi.  *See* Dkt. No. 89-5 at 5.  "[I]n late February or early March 2013, a determination was made that the tam needed to be disposed of."  *See* Dkt. No. 89-6 at 5.  Defendant Morris claims that she "did not specifically direct that . . . Plaintiff should be required to dispose of the headgear . . . . [and that she] deferred to DOCCS' security personnel regarding whether" Plaintiff could keep the tam.  *Id.*  However, Defendant Antonelli claims that Defendant Morris

> requested input from [him] and [Defendant] Bly—who often advised DOCCS offices such as MFVS on security-related aspects of various inmate matters—as to whether the Plaintiff could retain possession of his headgear or be made to dispose of it. . . .  It was determined that . . . Plaintiff should be directed dispose of the tam. [Defendant Antonelli] relayed this information to the facility, instructing Eastern to advise . . . Plaintiff about his disposal options . . . .

4

Dkt. No. 89-4 at 4. On or about March 2, 2013, Plaintiff "elected to mail the tam out of [Eastern CF] to a relative." *Id.*

**B.   Motion for Summary Judgment and Magistrate Judge Dancks' Report-Recommendation and Order**

In their motion for summary judgment, Defendants argue that Plaintiff's claims should be dismissed for the following reasons: (1) Plaintiff failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a); (2) Defendants Waugh, Leifeld, Larkin, Antonelli and Bly did not have sufficient personal involvement; (3) RLUIPA does not authorize money damages; (4) Plaintiff's claims for injunctive and declaratory relief were made moot when he was transferred from Eastern CF to Woodbourne Correctional Facility; and (5) Defendants are entitled to qualified immunity. Dkt. No. 89-9 at 7-20. Plaintiff did not respond in opposition to the motion.

On February 28, 2018, Magistrate Judge Dancks issued a Report-Recommendation and Order recommending the Court grant summary judgment as to Defendant Waugh, and partial summary judgment as to Defendants Leifeld, Larkin, Antonelli, Bly, and Morris. *See* Dkt. No. 91 at 33. As to Defendants' exhaustion argument, Magistrate Judge Dancks determined that Plaintiff had exhausted his claims via the grievance process for all claims except those against Defendant Waugh. *See id.* at 21, 23. Magistrate Judge Dancks noted that Plaintiff's IGRC complaint and his subsequent appeals achieved the policy goals of PLRA's exhaustion requirement by giving DOCCS notice of the problem and an opportunity to adjudicate Plaintiff's claims. *See id.* at 22-23 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89-90 (2006)).

Further, Magistrate Judge Dancks found that there was a triable question of fact as to whether the remaining Defendants had sufficient personal involvement in limiting, and ultimately prohibiting, Plaintiff's tam. *See id.* at 26-28. Magistrate Judge Dancks also recommended

5

denying summary judgment on qualified immunity. *See id.* at 31. Magistrate Judge Dancks noted that there remains a question of fact as to "whether there was a legitimate penological reason to limit" Plaintiff's tam and that "a reasonable jury could conclude that it was objectively unreasonable for Defendants to believe that they were not violating Plaintiff's federally protected rights." *Id.* at 31. However, Magistrate Judge Dancks recommended that the Court grant summary judgment on Plaintiff's RLUIPA claim for monetary relief, given that the statute does not authorize money damages, and Plaintiff's request for injunctive and declaratory relief, given that Plaintiff was no longer incarcerated at Eastern CF and the Second Circuit prohibits awarding injunctive and declaratory relief after an inmate is transferred from the offending institution. *See id.* at 32.

### III. DISCUSSION

**A. Standard of Review**

A court may grant a motion for summary judgment only if "the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the nonmoving party. *See id.* at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material

facts, the court may not rely solely on the moving party's statement of material facts; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003).

Moreover, "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). "Indeed, the Second Circuit has stated that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment." *Id.* (citing *Showers v. Eastmond*, No. 00 CIV. 3725, 2001 WL 527484, at *1 (S.D.N.Y. May 16, 2001)).

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid*, 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart*, No. 02-CV-1126, 2004 WL 2725126, *1 (S.D.N.Y. Nov. 29, 2004).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to

object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)).  A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority.  *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal.  *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)).  A *pro se* litigant must be given notice of this rule; notice

8

is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

**B.     Exhaustion as to Defendants Antonelli and Bly**

Defendants' first objection to Magistrate Judge Dancks' Report-Recommendation and Order is that DOCCS had no notice of Defendants Antonelli and Bly's conduct, and thus, the claim was not exhausted. Dkt. No. 92 at 5, 7.

As Magistrate Judge Dancks noted in her decision, the purpose of the PLRA's exhaustion requirement is twofold. First, it give agencies "an opportunity to correct its own mistakes with respect to the program it administers before it is haled into federal court." *Woodford*, 548 U.S. at 89. Second, exhaustion promotes efficiency for the agency and federal courts by allowing agencies an initial opportunity to resolve claims "much more quickly and economically" and providing courts "a useful record for subsequent judicial consideration." *Id.* "The primary purpose of a grievance is to alert prison officials to a problem, not to provide notice to a particular official that he may be sued . . . ." *Jones v. Bock*, 549 U.S. 199, 219 (2007) (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

Here, IGRC concluded that the determination of whether Plaintiff's tam was a protected article of clothing should be made by DOCCS' central offices in Albany. Plaintiff appealed this decision to CORC, which exhausted his remedies. After an investigation, DOCCS determined

9

that Plaintiff was not entitled to wear his tam on religious grounds. Subsequently Defendants Antonelli and Bly participated in the decision to completely prohibit Plaintiff from both wearing and possessing his tam.March 27, 2018 Thus, the goals of PLRA's exhaustion requirement had been satisfied because DOCCS had notice of the free exercise problem, an opportunity to adjudicate it with respect to Plaintiff outside of federal court, and produced a record upon which the Court is able to utilize in resolving the controversy. As such, Magistrate Judge Dancks correctly determined that Plaintiff exhausted his free exercise claim.

**C.   Personal Involvement of Defendants Antonelli and Bly**

Defendants also object to Magistrate Judge Dancks' Report-Recommendation and Order on the grounds that Defendants Antonelli and Bly were not personally involved in violating Plaintiff's rights. *See* Dkt. No. 92 at 7-8. They argue that Defendants Antonelli and Bly did not participate in determining that the tam was not permissible as religious headgear for a member of the Jewish faith, so they did not violate his federally protected rights. *See id.*

While it is true that Defendants Antonelli and Bly were not personally involved in the CORC proceedings, they were personally involved in the deprivation. After DOCCS determined that Plaintiff was not entitled to wear his tam on religious grounds, he was still permitted to wear it within his cell for several months. However, in late February or early March 2013, Defendant Morris contacted Defendants Antonelli and Bly to determine whether Plaintiff should be permitted to keep his tam and deferred to their judgment. While they may have relied on Defendant Morris' earlier determination that Plaintiff had no religion-based entitlement to the tam, they still advised a course of action that resulted in a possible further deprivation. Thus, given Defendants Antonelli and Bly's involvement in the decision to prohibit Plaintiff from wearing the tam in his cell, there is a triable question of fact as to whether they were personally

involved in depriving Plaintiff of federally protected rights. As such, Magistrate Judge Dancks correctly concluded that summary judgment should not be granted for Defendants Antonelli and Bly.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Dancks' Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons set forth therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 89) is **GRANTED in part**, and **DENIED in part**;[3] and the Court further

**ORDERS** that Defendant F. Waugh be terminated as a party; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 27, 2018
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[3] Defendants' motion for summary judgment is granted as to Plaintiff's claims for injunctive and declaratory relief, Plaintiff's RLUIPA monetary damages claims, and Plaintiff's claims against Defendant Waugh. Defendants' motion for summary judgment is denied as to Plaintiff's claims against Defendants Leifeld, Larkin, Antonelli, Bly, and Morris.